1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMIL HOWARD,

11              Petitioner,                    No. CIV S-04-2414 FCD KJM P

12       vs.

13   ROSEANNE CAMPBELL, Acting Warden,

14              Respondent.               <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16          Petitioner is a state prison inmate proceeding with counsel with a petition for a

17   writ of habeas corpus under 28 U.S.C. § 2254, challenging his San Joaquin County conviction

18   for four counts of second degree murder.  He raises the following grounds for relief:

19   (1) California's statutory and decisional law regarding vehicular implied malice murder is

20   unconstitutionally vague, amounting to a denial of due process; (2) petitioner was denied due

21   process by the court's approval of jury instructions that fail to state a meaningful distinction

22   between vehicular manslaughter and vehicular implied malice murder; (3) the prosecutor's

23   closing argument contained several misstatements of law, which improperly influenced the jury;

24   (4) petitioner's trial counsel was ineffective in failing to present evidence of petitioner's attention

25   deficit hyperactivity disorder (ADHD); and (5) petitioner was denied due process because his

26   /////

                                         1

case was prosecuted by a deputy district attorney who was himself involved in a series of alcohol

related vehicle collisions.

I. Procedural And Factual Background

Petitioner was charged in San Joaquin County Superior Court with four counts of

second degree murder, following a police chase that ended in a fatal collision.  Following a jury

trial, petitioner was convicted on all four counts, and was sentenced to a prison term of fifteen

years to life.[1]  CT 564-568, 914.

The state Court of Appeal's summary of the facts developed at trial is consistent

with this court's reading of the record:

> Defendant went with a friend and stole a 1998 Dodge Ram pickup
> truck with a V-8 Magnum engine.  On February 20, 2001,
> defendant drove the stolen truck to Stockton's Franklin High
> School, where he was a senior.  When school ended, defendant
> agreed to give three girls a ride home -- Teela Miller, Tasha Miller,
> and Reddisha Jit.
>
> As defendant left the school parking lot, he failed to stop at a stop
> sign and drove in the wrong direction on a street.  Officer Tim
> Kegarice of the Stockton Unified School District observed this
> behavior.  He pulled his patrol car into traffic directly behind
> defendant and activated his overhead light.  Instead of stopping,
> defendant accelerated to 50 miles per hour and continued down
> Oro Street.  Tasha asked defendant to pull over.
>
> Near the intersection with Washington Street where cars were
> ahead of him, defendant pulled into the parking lot of a grocery
> store.  He weaved through the cars in the parking lot.  Defendant
> exited the parking lot onto Washington Street and accelerated
> rapidly, faster than Officer Kegarice could accelerate.
>
> Defendant turned left onto Olive Avenue, continuing to increase
> the distance between himself and Officer Kegarice.  Defendant told
> the girls to buckle their seatbelts because the truck was stolen and
> they were "going for a ride."  The girls screamed for defendant to
> stop.  Defendant disregarded the stop sign at Horner Avenue, going
> about 60 miles per hour, and approached Main Street.

/////

---

[1]  Petitioner also pled guilty to vehicle theft in connection with this incident, for which he was sentenced to a concurrent term of two years. RT 625-630.

> Defendant ran the stop sign at Main Street, entering the
> intersection going about 50 to 60 miles per hour.  Without braking,
> he hit an Oldsmobile that was traveling westbound on Main Street.
> The collision killed all four occupants of the Oldsmobile -- 43-
> year-old Bernice Martinez, 16-year-old Christina Martinez, 14-
> year-old Ashley Martinez, and 14-year-old Desiree Guzman.

Lodged Doc. 4, Attach. A (Court of Appeal Opinion) at 1-3.  Petitioner appealed his conviction

to the Third District Court of Appeal, raising arguments similar to his first three grounds for

relief in his petition to this court.  See Lodged Doc. 1 (Appellant's Brief).  The Court of Appeal

affirmed the judgment of the Superior Court on July 7, 2003.  Court of Appeal Opinion at 17.

On September 17, 2003, the California Supreme Court denied review.  Lodged Doc. 5.

While direct review was ongoing, petitioner also pursued collateral relief in the

state courts, raising arguments similar to grounds 4 and 5 in the instant petition.  The Superior

Court denied petitioner's petition in a reasoned opinion on July 30, 2003.  Lodged Doc. 7.  The

Court of Appeal denied the petition without comment on September 18, 2003.  Lodged Doc. 10.

On August 11, 2004, the California Supreme Court denied the petition in a two sentence opinion,

citing Ex parte Swain, 34 Cal. 2d 300, 304 (1949), and People v. Duvall, 9 Cal. 4th 464, 474

(1995).  Lodged Doc. 12.

II.  Standards Under The AEDPA

An application for a writ of habeas corpus by a person in custody under a judgment of a

state court can be granted only for violations of the Constitution or laws of the United States.  28

U.S.C. § 2254(a).  Federal habeas corpus relief also is not available for any claim decided on the

merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").  See Ramirez v. Castro,

365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[2]  Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d).  Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the

---

[2]  In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . .  At best, it is constitutional dicta."  However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees.  Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief.  See Lockyer, 538 U.S. at 70-71; Ramirez, 365 F.3d at 773-75.

law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

III.  Failure To Exhaust State Remedies

Respondent argues the court should dismiss petitioner's fourth and fifth grounds for relief, as these claims have not been exhausted in the state courts.  The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).

/////

/////

1       In this case, the California Supreme Court cited two cases in denying petitioner's

2  habeas petition, <u>Swain</u>, 34 Cal.2d at 304, and <u>Duvall</u>, 9 Cal.4th at 474.  The Ninth Circuit has

3  interpreted a <u>Swain/Duvall</u> citation to mean that a defendant has failed to exhaust state remedies,

4  because the defendant is being given an opportunity to amend his pleadings to "allege with

5  sufficient particularity the facts warranting habeas relief."  <u>King v. Roe</u>, 340 F.3d 821, 823 (9th

6  Cir. 2003).  Thus, the court must conclude that petitioner's claims are unexhausted as to his

7  fourth and fifth grounds for relief.

8       Nevertheless, the court may address petitioner's claims "when it is perfectly clear

9  that the petitioner has no chance of obtaining relief."  <u>Cassett v. Stewart</u>, 406 F.3d 614, 624 (9th

10  Cir. 2005).  After considering the petition, the answer, reply and state court record, the court

11  finds the <u>Cassett</u> standard has been satisfied as to grounds four and five, and thus addresses all of

12  petitioner's claims below.

13  IV.  <u>Vagueness Of California Statutory And Decisional Law (Ground 1)</u>

14       In his first ground for relief, petitioner argues that California's statutory and

15  decisional law regarding vehicular implied malice murder and vehicular manslaughter is

16  "confusing, contradictory, and imprecise."  Mem. P. & A. in Supp. Pet. (Pet.) at 13.  Thus, he

17  contends, the court should hold this body of law void for vagueness under the Due Process

18  Clause of the Fourteenth Amendment.  <u>Id</u>. at 13-22.  The Court of Appeal rejected this argument:

19          As defendant concedes, we are bound by precedents of the
20         California Supreme Court. [] Accordingly, we are not at liberty to
            hold that the distinction between vehicular manslaughter and
21         murder is illusory.  Moreover, we agree with the high court's
            analysis.

22          Defendant asserts: "Every use of a motor vehicle is potentially
            dangerous to human life.  And grossly negligent operation of a
23         motor vehicle is always dangerous to human life.  There is no
            difference between danger to personal safety and danger to human
24         life.  It is not possible to cause a vehicular collision serious enough
            to cause personal injury, and then claim that the driver expected a
25         personal injury short of death.  The forces involved, and the
            vulnerability of the human body, are too great to permit such a
26         distinction."

1
2
3
4
5
6
7
8

> The flaw in defendant's argument is that, even though every use of a motor vehicle involves an abstract risk to life and limb, the manner in which the vehicle is used may increase the risk.  When it reaches an objective level in which so slight a degree of care is exercised as to raise a presumption of conscious indifference to the consequences, a defendant may be prosecuted for gross vehicular manslaughter.  When, in addition, the defendant has a subjective awareness of the specific risk involved in the way he is driving and the mental state is more culpable, involving an element of wantonness which is absent in gross negligence, a defendant may be prosecuted for implied malice murder.  We disagree with defendant that this is a distinction without a difference or that it is void for vagueness.  The existence of the crime of gross vehicular manslaughter does not preclude prosecution for murder when the circumstances reveal "more aggravated culpability." [].

9   Court of Appeal Opinion at 5-6 (citations omitted).

10          It is a basic principle of due process that an enactment is void for vagueness if its

11   prohibitions are not clearly defined.  Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).

12   The void-for-vagueness doctrine requires that a penal statute define the criminal offense with

13   "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a

14   manner that does not encourage arbitrary and discriminatory enforcement."  Kolender v. Lawson,

15   461 U.S. 352, 357 (1983).  "Although the doctrine focuses both on actual notice to citizens and

16   arbitrary enforcement, . . . the more important aspect of [the] vagueness doctrine is not actual

17   notice, but the requirement that a legislature establish minimal guidelines to govern law

18   enforcement."  Id. (citation omitted).  If a statute is not clear enough to guide citizens in avoiding

19   violating it and provide authorities with principles governing enforcement, a defendant cannot be

20   punished for violation.  United States v. Kim, 449 F.3d 933, 942 (9th Cir. 2006).

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

1    California Penal Code §187(a) defines murder as "the unlawful killing of a human

2    being, or a fetus, with malice aforethought." Such malice may be implied "when the

3    circumstances of the killing show an abandoned and malignant heart." Cal. Penal Code §188.

4    The California Supreme Court has held that implied malice exists

5            when a person does an act, the natural consequences of which are
             dangerous to life, which act was deliberately performed by a person
6            who knows that his conduct endangers the life of another and who
             acts with conscious disregard for life . . . Phrased in a different
7            way, malice may be implied when defendant does an act with a
             high probability that it will result in death and does it with a base
8            antisocial motive and with a wanton disregard for human life.

9    People v. Watson, 30 Cal.3d 290, 300 (1981).

10            Vehicular manslaughter, on the other hand, is defined as "driving a vehicle in the

11    commission of an unlawful act, not amounting to felony, and with gross negligence; or driving a

12    vehicle in commission of a lawful act which might produce death, in an unlawful manner, and

13    with gross negligence." Cal. Penal Code §192(c)(1). Gross negligence is "the exercise of so

14    slight a degree of care as to raise a presumption of conscious indifference to the consequences."

15    Watson, 30 Cal.3d at 296. "The state of mind of the person who acts with conscious

16    indifferences to the consequences is simply, 'I don't care what happens.'" People v. Olivas, 172

17    Cal.App.3d 984, 988 (1985).

18            Although generally similar in their definitions, the crimes of implied malice

19    second degree murder and vehicular manslaughter are distinguishable by their requisite mental

20    states. A finding of gross negligence is made by applying an objective test: whether a reasonable

21    person in defendant's position would have been aware of the risk involved in defendant's

22    conduct. Watson, 30 Cal.3d at 296-97. However, a finding of implied malice murder is made by

23    applying a subjective standard: whether the defendant actually appreciated the risk involved. Id.

24            This distinction is not trivial, nor is it difficult to understand. Indeed, the use of

25    subjective/objective tests of mental state to determine culpability is a fairly widespread practice

26    in the fields of criminal and tort law, both in California and in other states. In a case where a

8

1  defendant has exercised a degree of care so slight as to raise an inference of conscious

2  indifference to the consequences, and where the defendant's driving leads to a death, then the

3  defendant may be charged with and convicted of gross negligence vehicular manslaughter.

4  Where, as in this case, there is additional evidence suggesting that the defendant actually was

5  aware of the risks created by his driving, a prosecutor may additionally charge and a jury may

6  convict for implied malice second degree murder based on that evidence.  The court finds that

7  California statutory and decisional law on this issue provide sufficient guidelines to prevent

8  arbitrary or discriminatory enforcement, as required by <u>Kolender</u>.  The law in this area is not

9  unconstitutionally vague, and the Court of Appeal's decision was not contrary to or an

10  unreasonable application of federal law.  Thus petitioner's first ground for relief should be

11  denied.

12  V.  <u>Jury Instructions (Ground 2)</u>

13          In his second ground for relief, petitioner argues that he was denied due process

14  by California's standard jury instructions defining second degree murder[3] and vehicular

15  manslaughter.[4]  He contends that these instructions fail to state a meaningful distinction between

---

17     [3] CALJIC 8.31, as given to the jury, states: "Murder of the Second Degree is unlawful
killing of a human being when

18          1. The killing resulted from an intentional act,
19          2. The natural consequences of the act are dangerous to human life,
           and
20          3. The act was deliberately performed with knowledge of the danger to,
           and with conscious disregard for, human life.

21     When the killing is the direct result of such an act, it is not necessary to prove that the
defendant intended that the act would result in the death of a human being."  CT 609.

23     [4] CALJIC 8.90, as given to the jury, states:  "Every person who drives a vehicle in a
grossly negligent manner and unintentionally but unlawfully kills another human being is guilty
24  of the crime of Vehicular Manslaughter with Gross Negligence in violation of Penal Code
section 192(c)(1).

25     A killing is unlawful when a person commits an unlawful act not amounting to a felony
which is dangerous to human life under the circumstances of its commission, which unlawful act
26  is the cause of the death of another human being.         (more)

the two crimes, thus denying him a fair trial.  Additionally, petitioner contends that the issue was further confused by the trial court's inclusion of a jury instruction as to reckless driving,[5] which was one of the possible "unlawful act[s], not amounting to a felony," Cal. Penal Code §192(c)(1), upon which the jury could base a vehicular manslaughter verdict.  Finally, petitioner contends

/////

---

In order to prove this crime, each of the following elements must be proved:

1. The driver of a vehicle committed with gross negligence an unlawful act not amounting to a felony, which under the circumstances of its commission was dangerous to human life, namely, a violation of Vehicle Code sections 22352(a)(2)(A), Speeding in Excess of the Prima Facie Speed Limit of 25 Miles Per Hour in a Residential District, Vehicle Code section 21802, Failure to Stop at a Stop Sign, or Vehicle Code section 23104, Reckless Driving; and

2. The unlawful act was a cause of the death of another human being."

CT 613-614.

The jury also was instructed on gross negligence according to CALJIC 3.36, which states "'Gross negligence' means conduct which is more than ordinary negligence. Ordinary negligence is the failure to exercise ordinary or reasonable care.

'Gross negligence' refers to a negligent act which is aggravated, reckless, or flagrant and which is such a departure from what would be the conduct of an ordinarily prudent, careful person under the same circumstances as to be contrary to a proper regard for human life or to constitute indifference to the consequences of such act. The facts must be such that the consequences of the negligent act could reasonably have been foreseen and it must appear that the death was not the result of inattention, mistaken judgment or misadventure but the natural and probable result of an aggravated, reckless or flagrantly negligent act."  CT 608.

[5] CALJIC 16.840, as given to the jury, states:  "Every person who drives a vehicle upon a street highway in willful or wanton disregard for the safety of persons or property is guilty of a violation of Vehicle Code section 23103(a), Reckless Driving, a misdemeanor.

'Willful or wanton disregard' means an intentional or conscious disregard for the safety or persons or property.

In order to prove this crime, each of the following elements must be proved:

1. A person drove a vehicle upon a street; and

2. At the time, the driver did so with an intentional or conscious disregard for the safety of persons or property."

CT 616.

1   that the trial court erred in drafting further jury instructions in an attempt to highlight the

2   differences between these three crimes.[6]  Pet. at 23-29.

3      Claims of error in state jury instructions are generally a matter of state law and

4   thus do not usually invoke a constitutional question.  Hayes v. Woodford, 301 F.3d 1054, 1086

5   (9th Cir. 2002).  It is not the province of a federal habeas court to reexamine state court

6   determinations of state law questions.  Estelle v. McGuire, 502 U.S. 62, 68 (1991); Gilmore v.

7   Taylor, 508 U.S. 333, 348-49 (1993).

8      In order to warrant federal habeas relief, a challenged jury instruction cannot be

9   merely "undesirable, erroneous, or even universally condemned, but must violate some due

10   process right guaranteed by the Fourteenth Amendment."  Cupp v. Naughten, 414 U.S. 141, 146

11   (1973).  A violation of due process occurs if a trial is fundamentally unfair.  Estelle, 502 U.S. at

12   72-73; Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988).  In making this determination, a

13   reviewing court should not view the challenged instruction in isolation, but must consider it in

14   the context of the instructions as a whole and the entire trial process.  Id.

15      If the court does find constitutional error, the court must also find that the error

16   had a substantial and injurious effect or influence in determining the jury's verdict before

17   granting relief in habeas proceedings.  See Calderon v. Coleman, 525 U.S. 141, 146-47 (1998).

18

---

19     [6]  In response to defense concerns, the trial court included an additional instruction
20   clarifying the differences between the requisite mental states for second degree murder and
vehicular manslaughter. This instruction states:  "There is a mental state that is required for
21   Murder in the Second Degree that is not required for Vehicular Manslaughter with Gross
Negligence. If a person causes another's death by doing an act or engaging in conduct in a
22   grossly negligent manner without realizing the risk involved, he may be guilty of Vehicular
Manslaughter with Gross Negligence. If, on the other hand, the person realized the risk and acted
23   in total disregard of the danger to life involved, he may be guilty of Murder in the Second
Degree."  CT 610.

24     The trial court also modified the Reckless Driving instruction, 16.840, to include:  "The
25   difference between [the] mental state [necessary for Reckless Driving] and the necessary mental
state for Murder in the Second Degree is that for Reckless Driving the conscious disregard is for
26   the safety of persons or property. For Murder in the Second Degree, the conscious disregard is for
the risk of death to human beings."  CT 616.

1   The court must disregard any errors in jury instructions that are harmless beyond a reasonable

2   doubt.  Neder v. United States, 527 U.S. 1, 7-8 (1999).

3           In the instant case, the jury was instructed that vehicular manslaughter requires a

4   showing that petitioner's mental state was "contrary to a proper regard for human life" or

5   constituted "indifference to the consequences of the act." CALJIC 3.36; CT 608.  Jurors were

6   further instructed that the vehicular manslaughter conviction could be based upon a showing of

7   reckless driving, which requires petitioner's "wanton disregard for the safety of persons or

8   property." CALJIC 16.840; CT 616.  Petitioner contends that these two mental states, put

9   together, become virtually indistinguishable from the mental state for implied malice second

10  degree murder:  "an act deliberately performed with knowledge of the danger to, and conscious

11  disregard for, human life."  CALJIC 8.31.  The court disagrees.

12          As the court explains in Part IV above, there is a legal difference between the

13  subjective/objective mental states separating implied malice murder from vehicular

14  manslaughter.  There is also a clear cut difference between the second degree murder mental state

15  of "conscious disregard for human life" and reckless driving's mental state of "conscious

16  disregard for the safety of persons or property."  Considering this issue, the Court of Appeal

17  stated:

18          We do not agree that "conscious disregard for the safety of
            persons" is the same as "conscious disregard for human life."  The
19          latter is merely a subset of the former.  A person can drive a car
            with "conscious disregard for the safety of persons" without also
20          having a "conscious disregard for human life."

21  Court of Appeal Opinion at 10.  Furthermore, any confusion created by these three seemingly

22  similar mental states was dispelled by the additional instructions drafted by the trial court.  The

23  added instructions specifically highlighted the difference between second degree murder's

24  subjective awareness standard and vehicular manslaughter's gross negligence standard, and the

25  difference between disregard of personal safety compared to disregard of human life.  These

26  instructions were all well-enough defined to avoid confusion by the jury.  Thus, the giving of the

1  instructions did not constitute a denial of petitioner's right to due process under the Fourteenth

2  Amendment.

3  VI.  Prosecutor's Statements in Closing Argument

4          In his third ground of relief, petitioner argues that he was prejudiced by various

5  statements made in the prosecution's closing argument that allegedly misstated the law, advanced

6  improper legal theories, and invited the jury to decide the case based upon emotion and

7  prejudice, rather than the evidence presented.  Pet. at 30-49.

8          Statements made by prosecutors in closing argument are reviewed in habeas

9  corpus proceedings for denial of due process. Under this standard of review, it is not enough that

10  the prosecutor's remarks were undesirable or even universally condemned.  Darden v.

11  Wainwright, 477 U.S. 168, 180 (1986).  Rather, a court must examine whether the prosecutor's

12  comments "so infected the trial with unfairness as to make the resulting conviction a denial of

13  due process."  Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)).  In making

14  this determination, a court must examine the prosecutor's comments in context.  See United

15  States v. Robinson, 485 U.S. 25, 33 (1988); Greer v. Miller, 483 U.S. 756, 765-66 (1987).

16          Moreover, relief for such claims is limited to cases in which petitioner can

17  establish that prosecutorial misconduct resulted in actual prejudice.  Johnson v. Sublett, 63 F.3d

18  926, 930 (9th Cir. 1995).  Actual prejudice occurs when the alleged prosecutorial misconduct has

19  a "substantial and injurious effect or influence in determining the jury's verdict."  See Ortiz-

20  Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

21      A.  Statement Regarding Mental States for Reckless Driving and Second Degree Murder

22          Petitioner first argues that the prosecutor made statements that distorted and

23  trivialized the differences in mental state required for reckless driving and implied malice second

24  degree murder.  Pet. at 42-43.  Specifically, the prosecutor stated:

25              . . . Reckless driving, a misdemeanor.  But the elements are almost
                the same.  If you commit reckless driving, you can also be eligible
26              for gross vehicular manslaughter, except there's only one problem.

1    You can't have reckless driving here, because to have reckless
     driving here you have to have willful or wanton disregard, meaning
2    an intentional -- see, it says intentional.  He's got to read it to you.
     Intentional.  It's got to be intentional.  And then it's gotta be "with
3    conscious disregard for the safety of persons."  Well, that's here.
     So if it's reckless driving, it should be murder.
4
     And you're going to hear this instruction.  You're going to have
5    this to look at.  You're going to have this to hold, to interpret,
     using your common sense, to have vehicular manslaughter --
6
                 MR. THOMAS: Objection, misstatement of the law.
7
                 THE COURT: Sustained.
8

9    RT 864-865.  Petitioner argues that, although the objection was sustained, the prosecutor's

10   comments left the jury with an impression that a conviction for second degree murder could be

11   based upon the exact same mental state as a conviction for reckless driving.  The Court of Appeal

12   rejected this argument:

13           As we noted, the jury was instructed properly on the difference
             between implied malice murder and gross vehicular manslaughter
14           based on reckless driving.  The prosecutor was apparently confused
             and stated that, if there was reckless driving, the crime was murder.
15           This is not so because the conscious disregard element of murder is
             for human life while the conscious disregard element for reckless
16           driving is for the safety of persons.  This was properly presented to
             the jury in the court's instructions and defendant's objection to the
17           prosecutor's misstatement of the law was sustained.  The jury was
             also instructed that statements by counsel concerning the law were
18           not controlling.  Accordingly, there is no reasonable likelihood that
             the jury applied the prosecutor's misstatement.
19

20   Court of Appeal Opinion at 12.  The court agrees with the Court of Appeal's analysis.  Despite

21   the prosecutor's apparent confusion as to the different mental states required for reckless driving

22   and second degree murder, the jury was properly instructed on this issue, as noted in Part IV

23   above.  Specifically, the jury was instructed that reckless driving requires a conscious disregard

24   for the safety of persons, whereas implied malice second degree murder requires conscious

25   disregard for human life.  CT 608, 616.  The jury was further instructed that statements by

26   counsel concerning the law are not controlling, CT 573, and that attorney statements do not

                                                    14

1   constitute evidence, CT 575.  In light of these instructions, the court finds it highly unlikely that

2   the jury was confused or misled by the prosecutor's misstatement.  Petitioner was not denied due

3   process by the misstatement.

4             B.   <u>Statements Allegedly Altering Distinctions Between Manslaughter and Murder</u>

5             Petitioner next argues that the prosecutor made several statements that improperly

6   diminished the circumstances in which petitioner could be found guilty of manslaughter, or

7   enlarged the circumstances in which petitioner could be found guilty of murder.  Pet. at 43-46.  In

8   the first challenged statement, the prosecutor stated that evidence to support the gross negligence

9   necessary for a manslaughter verdict could be found in "a mere infraction of speeding" or "the

10   mere failure to stop at a stop sign." RT 867.  Petitioner argues this statement tended to trivialize

11   the evidence necessary to support a manslaughter conviction.  The court notes that petitioner's

12   trial counsel objected to the prosecutor's statement, and the objection was sustained as a

13   misstatement of the law.  RT 867-868.  Furthermore, the jury was properly instructed on the

14   elements of vehicular manslaughter and murder.  Thus, petitioner was not prejudiced by the

15   prosecutor's statement.

16             Later, the prosecutor argued petitioner should be convicted of murder because

17   defendant drove recklessly in order to avoid losing his stolen truck, an action the prosecutor

18   called "disregard, conscious disregard, for the welfare of everybody."  RT 871.  Petitioner argues

19   this statement improperly inflates the scope of murder by inviting the jury to convict based on

20   petitioner's disregard for "the welfare of everybody."  Finally, the prosecutor stated that

21   "conscious disregard for the safety of persons" is "kind of like your well-being, maybe your

22   emotional state . . ." RT 894.  Petitioner argues that this statement further minimizes the

23   requisite showing for vehicular manslaughter.

24             With regard to the above statements, the Court of Appeal held that "defendant did

25   not preserve these comments for review because he did not object to them specifically and seek

26   curative instructions."  Court of Appeal Opinion at 13.  Under California law, "[i]n order to

1   preserve a claim of prosecutorial misconduct for appeal, the defense must make a timely

2   objection at trial and request an admonition.  In the absence of a timely objection the claim is

3   reviewable only if an admonition would not have otherwise cured the harm caused by the

4   misconduct."  People v. Gutierrez, 28 Cal.4th 1083, 1146 (2002) (citations omitted).

5                A federal court will not review a claim of federal constitutional error raised by a

6   state habeas petitioner if the state court determination of the same issue "rests on a state law

7   ground that is independent of the federal question and adequate to support the judgment."

8   Coleman v. Thompson, 501 U.S. 722, 729 (1991).  This rule also applies when the state court's

9   determination is based on the petitioner's failure to comply with procedural requirements, so

10  long as the procedural rule is an adequate and independent basis for the denial of relief.  Id. at

11  730.  For the bar to be "adequate," it must be "clear, consistently applied, and well-established at

12  the time of the [] purported default."  Fields v. Calderon, 125 F.3d 757, 762 (9th Cir. 1997).  For

13  the bar to be "independent," it must not be "interwoven with the federal law."  Michigan v. Long,

14  463 U.S. 1032, 1040-41 (1983).  If an issue is procedurally defaulted, a federal court may not

15  consider it unless the prisoner can demonstrate cause for the default and actual prejudice as a

16  result of the alleged violation of federal law, or demonstrate that failure to consider the claims

17  will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.

18                Under California law, a judgment may not be reversed by reason of the erroneous

19  admission of evidence unless "[t]here appears of record an objection to or a motion to exclude or

20  to strike the evidence that was timely made and so stated as to make clear the specific ground of

21  the objection or motion." Cal. Evid. Code § 353(a).  In Garrison v. McCarty 653 F.2d 374, 377

22  (9th Cir. 1981), the Ninth Circuit held that California's contemporaneous objection doctrine is

23  clear, well-established and has been consistently applied when a party has failed to make any

24  objection to the admission of evidence.  See also Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir.

25  1981), abrogated on other grounds by Ross v. Oklahoma, 487 U.S. 81 (1988).

26  /////

1        The Court of Appeal's decision as to these statements rests on adequate and

2   independent state grounds.  Because petitioner has made no showing of cause or prejudice, and

3   has not alleged a fundamental miscarriage of justice, he is procedurally defaulted from raising

4   objections to these statements in habeas proceedings.

5        C.   <u>Statements Allegedly Suggesting a Felony Murder Conviction</u>

6        Petitioner argues that the prosecutor made statements in closing argument that

7   tended to improperly advance a theory of felony murder based upon petitioner's theft of the truck

8   two days before the murder.  Pet. at 46-48.  Specifically, the prosecutor argued that petitioner's

9   actions were not the result of panic, but rather, "Mr. Howard made that decision two days earlier,

10  a day and a half, when he stole that truck and drove it."  RT 874.  Later, the prosecutor stated that

11  "[t]he awareness of the risk started a day and a half before when the truck was stolen.  The

12  awareness of the risk is knowing that you're driving a hot vehicle."  RT 938.

13       Petitioner's trial counsel repeatedly expressed the concern that these statements

14  improperly invited the jury to base the felonious intent for murder upon the truck theft.  RT 954-

15  955, 1014.  The trial court disagreed, stating, "It is a fair inference to suggest that if the defendant

16  told the police that he didn't want to lose possession of the car and that's why he didn't stay, that

17  that desire to retain possession of the car took place at or about the time he obtained possession

18  of the vehicle. . . ."  RT 956; <u>see also</u> RT 1016-1017.

19       The Court of Appeal agreed with the reasoning of the trial court:

20       As the trial court stated in denying the motion for new trial, the
         apparent significance of the argument is that defendant intended to
21       flee rather than yield to a police stop and that he formed that intent
         when he stole the truck, not when he saw Officer Kegarice behind
22       him.  Defendant knew from the time he first drove the truck that he
         was driving a large and powerful vehicle.  It is reasonable to infer
23       that he calculated he could successfully flee from a less powerful
         patrol car.  Furthermore, it is reasonable to infer defendant knew
24       that such speed, combined with the size of the vehicle, would
         create a risk to human life.

25
         We find implausible defendant's argument that the prosecutor's
26       comments were directed toward the felony murder rule, that

                                         17

> commission of a dangerous felony exposed defendant to murder
> liability until he reached a place of temporary safety.  The jury was
> not instructed in this regard, and it certainly is not consistent with
> how a layman would interpret the prosecutor's comments.
> Accordingly, there was no prosecutorial misconduct in this regard.

Court of Appeal Opinion at 16.

The doctrine of felony murder is not well known outside of legal circles, and no instructions were ever asked for or given regarding felony murder.  In the absence of such instructions, it is unlikely that a jury would come to the impermissible conclusion that petitioner's commission of felony vehicle theft, in and of itself, could subject him to murder liability two days later.

        D.   Appeals to Passion and Prejudice

Finally, petitioner argues that the prosecutor made statements improperly inviting the jury to decide the case based upon passion and prejudice, rather than upon the evidence.  Pet. at 48-49.  Specifically, petitioner points to several prosecutor statements highlighting petitioner's "defiant" attitude on the stand, RT 865, 876, 906, 952, and also to one prosecutor statement that no argument he could make would do justice to victim Bernice Martinez and her daughters.  RT 951.

As the Court of Appeal noted, petitioner "did not object to these comments or request a curative instruction."  Court of Appeal Opinion at 17.  Thus, under California law, these issues were not preserved for appeal.  See Gutierrez, 28 Cal.4th at 1146.  Because the Court of Appeal's decision rests on adequate and independent state grounds, petitioner is procedurally defaulted from challenging these prosecutor statements in habeas proceedings.  Coleman, 501 U.S. at 749-50.

The court concludes that petitioner was not denied due process by any improper argument by the prosecutor at trial.  In ruling on these comments, the Court of Appeal did not act contrary to clearly established federal law, nor did it apply that law unreasonably.  Thus, petitioner's third ground for habeas relief should be denied.

1   VII.  Ineffective Assistance of Counsel (Ground 4)

2            Petitioner argues his Sixth Amendment rights were violated through ineffective

3   assistance of counsel, when his trial attorney failed to present evidence that petitioner suffered

4   from ADHD.  Pet. at 50.  This evidence comes in the form of a declaration by treating

5   psychiatrist Dr. Kent Rogerson.  Lodged Doc. 8, Attach. A (Declaration of Rogerson).  Petitioner

6   argues this evidence could have raised reasonable doubt in the minds of the jurors as to whether

7   petitioner could have entertained the necessary mens rea – conscious disregard for human life –

8   to sustain a conviction for second degree murder.

9            The Sixth Amendment right to counsel includes the right to effective assistance of

10   counsel.  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  To successfully claim

11   ineffective assistance of counsel, a petitioner must first show that, considering all the

12   circumstances, counsel's performance fell below an objective standard of reasonableness.

13   Strickland v. Washington, 466 U.S. 668, 688 (1984).  To this end, the defendant must identify

14   the acts or omissions that are alleged not to have been the result of reasonable professional

15   judgment.  Id. at 690.  The court then must determine whether in light of all the circumstances,

16   the identified acts or omissions were outside the wide range of professional competent assistance.

17   Id.  Second, a defendant must affirmatively prove prejudice.  Id. at 693.  Prejudice is found where

18   "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

19   proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability

20   sufficient to undermine confidence in the outcome."  Id.; see also United States v. Murray, 751

21   F.2d 1528, 1535 (9th Cir. 1985); United States v. Schaflander, 743 F.2d 714, 717-18 (9th Cir.

22   1984) (per curiam).

23            The right to effective assistance of counsel places a duty on a criminal attorney, at

24   a minimum, to perform a reasonable investigation sufficient to make informed decisions about

25   how best to represent the client.  Sanders v. Ratelle, 21 F.3d 1446, 1457 (9th Cir. 1994).  This

26   duty of investigation extends to the area of mental health.  Douglas v. Woodford, 316 F.3d 1079,

1085 (9th Cir. 2003) ("Trial counsel has a duty to investigate a defendant's mental state if there is evidence to suggest that the defendant is impaired."); Evans v. Lewis, 855 F.2d 631, 637 (9th Cir. 1988) (failure to investigate possibility of mental impairment cannot be construed as trial tactic where relevant documents were not even reviewed by counsel).

However, when counsel has begun investigation into mental health issues, the decision not to investigate further is not constitutionally deficient if that decision is made for valid tactical reasons. Siripongs v. Calderon, 133 F.3d 732, 734 (9th Cir. 1998). Moreover, the decision of whether or not to introduce medical evidence at trial is largely a question of professional judgment. Cacoperdo v. Demosthenes, 37 F.3d 504, 508 (9th Cir. 1994). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. (citing Strickland, 466 U.S. at 690).

In the instant case, petitioner argues his trial counsel was deficient in failing to investigate and present evidence of ADHD. Petitioner raised a similar objection in state habeas proceedings. The argument was rejected by the Superior Court, which concluded as follows:

> Concerning the claim of ineffectiveness of trial counsel, Petitioner has failed to demonstrate that counsel's conduct was anything other than trial tactics which are not reviewable on habeas corpus. The expert's own declaration indicates that counsel did in fact obtain the medical records for review and the court record indicates such were even provided to the court for consideration at the time of the preliminary hearing. Petitioner's argument here that if the jury had heard such evidence "it would undoubtedly have had a reasonable doubt of the conscious disregard element of implied malice murder" is conclusory and speculative. Such evidence could equally have been considered by the jury in connection with the witness testimony and physical evidence to establish the implied malice element as opposed to the gross negligence element. In that regard, Petitioner's allegations fail to allege a claim with sufficient particularity as required by law. [] Therefore, Petitioner has failed to establish trial counsel's alleged conduct was deficient and as such, prejudiced the petitioner and the outcome of the trial. [].

Lodged Doc. 7 (Superior Court Habeas Opinion) at 1-2 (citations omitted).

/////

/////

1       The record reveals that petitioner's counsel had investigated petitioner's mental

2  health as early as the preliminary hearing.  See CT 270 (counsel asks if the court has had an

3  opportunity to review the psychological packet).  Moreover, on September 18, 2001, petitioner's

4  counsel filed an in limine motion to preserve his right to introduce medical and psychological

5  testimony as to petitioner's diagnosis of ADHD.  CT 492-493.  In light of this evidence, the court

6  finds that petitioner's trial counsel fulfilled his duty to conduct a reasonable investigation into

7  petitioner's mental health issues.

8       The record does not disclose trial counsel's reasons for not presenting the

9  evidence at trial.  However, petitioner has presented nothing to undercut the presumption that the

10  decision was a valid tactical decision in light of the prosecutor's professed desire to counter such

11  evidence with his own evidence purportedly showing petitioner's anti-social personality.

12  Specifically, in pretrial proceedings on September 25, 2001, petitioner's counsel expressed his

13  desire to include evidence of petitioner's ADHD.  The prosecuting attorney did not object to the

14  introduction of that evidence, but discussed the possibility of presenting an alternate diagnosis of

15  antisocial personality disorder, either by impeaching petitioner's psychological experts or by

16  presenting his own competing experts.  The prosecuting attorney went on to state:

> Parts of the diagnosis for antisocial personality is nonconformity
> with the law, which includes smoking marijuana.  There's an issue
> of Mr. Jamil Howard's behavior in school, which includes
> numerous absences and unexcused absences, a weapon issue at the
> school, pretty much disorderly conduct throughout years of
> attending Franklin. . . .

21  RT 23.  The trial court agreed to exclude evidence of petitioner's marijuana use and disciplinary

22  problems at school during the prosecution's case in chief, while leaving open the possibility of

23  admitting this evidence to rebut petitioner's psychological testimony.  RT 27, 30.

24       Given that ruling, the court finds that petitioner has not borne his burden of

25  showing counsel's decision was not a reasonable, strategic determination.  By not presenting the

26  testimony, trial counsel avoided the risk of having the court admit highly prejudicial and

1   otherwise inadmissible evidence against his client.  Petitioner has not presented evidence

2   overcoming the presumption that trial counsel exercised reasonable professional judgment in this

3   regard.  The Superior Court's analysis was not contrary to or an unreasonable application of

4   clearly defined federal law.  Petitioner's fourth ground for relief must be denied.

5   VIII.  Prosecutorial Misconduct (Ground 5)

6          In his fifth ground for relief, petitioner claims he was denied due process because

7   his case was prosecuted by a deputy district attorney who was himself under investigation for a

8   series of alcohol-related vehicle collisions.  See Lodged Doc. 8, Attach. B.  Thus, petitioner

9   argues, the prosecutor unfairly pursued a murder conviction in petitioner's high profile case and

10  was overzealous in closing argument, in order to deflect attention away from the prosecutor's

11  own legal problems.  Pet. at 56-58.  Considering this issue in state habeas corpus proceedings,

12  the Superior Court held as follows:

13              In regard to the second issue, alleged prosecutorial misconduct in
               violation of due process, again the Petitioner has failed to
14              demonstrate the District Attorney's conduct was in fact "over
               zealous" and even so, that such conduct had any causal connection
15              to the alleged attempts to deflect attention from his own personal
               problems, nor improperly or unfairly influenced the jury in their
16              deliberations.  The court record reveals the trial judge sustained at
               least two objections by the defense during the People's closing
17              argument and then supplemented the initial jury instructions with
               an additional instruction on the distinction between the two mental
18              states in order to clarify any potential misleading comments by the
               People.

19

20  Lodged Doc. 7 (Superior Court Habeas Opinion) at 2.

21          A defendant in a criminal case has a due process right to an impartial prosecutor

22  who can make "unbiased use of all the options available to the prosecutor's office."  Jones v.

23  Richards, 776 F.2d 1244, 1247 (4th Cir. 1985).  However, review of claimed due process

24  violations in state court proceedings is narrow.  Newman v. Frey, 873 F.2d 1092, 1093 (8th Cir.

25  1989).  A court may grant relief only if a prosecutor's misconduct affects the fairness of the trial.

26  Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of

1  alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the

2  prosecutor.").

3         Petitioner has not presented sufficient evidence that the prosecutor's out-of-court

4  misconduct affected the fairness of petitioner's trial.  Petitioner alleges that the prosecutor

5  showed bias towards him by refusing to accept a plea of guilty to vehicular manslaughter

6  charges, and by making an overzealous closing argument.  However, petitioner overlooks the fact

7  that it is a prosecutor's job to argue zealously and to reject plea offers that he feels would be

8  contrary to the fair administration of justice.  Petitioner presents no direct evidence that the

9  prosecutor's actions in this case were in fact the result of the prosecutor's own legal problems.

10 The court notes, moreover, that petitioner does not have any due process right to have a plea

11 offer accepted by the district attorney.  See Santobello v. New York, 404 U.S. 257, 262 (1971)

12 ("There is, of course, no absolute right to have a guilty plea accepted.").

13        To the extent the prosecutor's closing argument was overzealous, these problems

14 were addressed by the trial court's sustaining of petitioner's objections to that argument.  See RT

15 865, 867.  The actions of the prosecutor in this case, even if somewhat hypocritical, did not affect

16 the fairness of petitioner's trial and thus did not violate his Fourteenth Amendment due process

17 rights.  The Superior Court's opinion was not contrary to or an unreasonable application of

18 federal law.  Petitioner's fifth ground for relief should be denied.

19        Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

20 writ of habeas corpus be denied.

21        These findings and recommendations are submitted to the United States District

22 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

23 days after being served with these findings and recommendations, any party may file written

24 objections with the court and serve a copy on all parties.  Such a document should be captioned

25 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26 shall be served and filed within ten days after service of the objections.  The parties are advised

that failure to file objections within the specified time may waive the right to appeal the District

Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 5, 2007.

U.S. MAGISTRATE JUDGE